UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

MICHAEL GREENE,

    Plaintiff,

v.

OFC. T. BUSTER, *et al*,

    Defendant.

No. 6:20-CV-128-DLB-HAI

RECOMMENDED DISPOSITION

\*\*\* \*\*\* \*\*\* \*\*\*

On June 19, 2020, the Clerk docketed a complaint by *pro se* Plaintiff Michael Greene in which he alleges violations of his constitutional rights by four prison employees at USP McCreary. D.E. 1. After Defendants filed their answer, the matter was referred to the undersigned. D.E. 33.

Greene explains that, in May 2019, Lieutenant Weiss visited his cell and requested that he dismiss his complaint filed against Officer Gadsbury. D.E. 1 at 8. When Greene refused, Lieutenant Weiss said, "[W]e will pull you out of the cell and you will regret filing your complaint." *Id.* Greene says that, on June 16, 2019, Officers Buster, Gabbard, and Worley placed him and his cellmate in handcuffs, took them to a secluded room, and made them undress. *Id.* The officers brought Greene and his cellmate back to the cell, and Officer Buster instructed that both be left in handcuffs. *Id.*

Greene says that, about twenty minutes later, the officers returned and ordered Greene and his cellmate out of the cell again. *Id.* While "calmly" walking down a stairwell, Officer Gabbard began yelling, "Stop resisting!" *Id.* at 8-9. Greene states that the officers picked him

up and slammed his body, including his head, to the concrete floor. *Id.* at 9. While on the floor, the officers repeatedly hit Greene's "face, eyes and body with closed fist punches." *Id.* Greene says that the officers repeatedly lifted and slammed him to the ground. *Id.* Greene also says that, at some point during the altercation, Officer Gabbard pulled his pants down and Officer Buster "violently inserted his gloved finger" into his rectum and repeatedly asked, "You gonna stop filing grievances of staff?" until Greene answered affirmatively. *Id.* At this point, Lieutenant Salmon arrived, told the officers to stop, and took Greene to a secluded room. *Id.* Greene says that Officer Buster then tightly wrapped and locked a chain around his waist, which cut into his skin. *Id.* Greene also says that Lieutenant Salmon failed to follow protocol by not having an immediate sexual assault kit conducted. *Id.*

Defense counsel deposed Greene on December 28, 2021. D.E. 95 (transcript). Now, the parties have filed cross-motions for summary judgment.[1] D.E. 102, 108. Defendants' motion was accompanied by the Declaration of Robin Eads. D.E. 102-2 at 3. Greene's motion was accompanied by his own declaration and his medical records from the Bureau of Prisons ("BOP") (D.E. 108-1, 108-2), and his response to Defendants' motion is accompanied by the Declaration of Chance Bonner and his own additional declaration. (D.E 107-1). All declarations were signed under penalty of perjury. D.E. 102-2 at 3, 107-1 at 2, 4, D.E. 108-1 at 2. Defendants argue that:

(1) Greene's retaliation and excessive use of force claims constitute an unwarranted extension of *Bivens*.

(2) Greene failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act.

---

[1] Both motions move for judgment on the pleadings or for summary judgment in the alternative and include attachments such as declarations and BOP records. D.E. 102, 108. Thus, the Court will treat both as motions for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

D.E. 102. Plaintiff's motion for summary judgment largely reasserts the allegations in his complaint. D.E. 108.

## I. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Parties moving for summary judgment are not required to put forth affirmative evidence to negate the existence of elements required by the non-moving party's claim. *Id.* at 324. It is sufficient for a moving party to merely state that there is an absence of evidence supporting the non-moving party's claim. *Id.* Once this is done, it then becomes the responsibility of the non-moving party to provide evidence which establishes an actual issue for trial. *See Employers Ins. Of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). "A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts." *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

The Court reviews all the evidence in the light most favorable to the responding party and draws all reasonable factual inferences in the responding party's favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).

The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

On cross-motions for summary judgment, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991); *see also Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court must review the evidence submitted in support of each cross-motion. *See B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 594 (6th Cir. 2001). And the Court has done so here.

## II. Exhaustion of Administrative Remedies

Here, summary judgment is warranted due to failure to exhaust administrative remedies. Exhaustion of administrative remedies is mandatory under the Prison Litigation Reform Act of 1995 ("PLRA") for any lawsuit challenging prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "There is no question that . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). It is not the prisoner's threshold burden to prove exhaustion; rather lack-of-exhaustion is an affirmative defense. *Id.* Once raised, the prisoner bears the burden of demonstrating proper exhaustion. And summary judgment is appropriate if defendants establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

Prisoners must exhaust all "available" remedies—not just those that meet federal standards. *Woodford*, 548 U.S. at 85. "To exhaust remedies, a prisoner must file complaints and

4

appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. It is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218.

Defendants' describe the BOP's grievance process in their motion:

> Within the Federal Bureau of Prisons, there is a four-tiered administrative grievance process for inmates who have a complaint about their confinement. This process is generally referred to the as the Administrative Remedy Program and is set out in Program Statement 1330.16, Administrative Remedy Program and 28 C.F.R. §§ 542.10-542.19. First, an inmate must informally present an issue of concern to staff and staff shall attempt to informally resolve the issue before the inmate submits a formal grievance. 28 C.F.R. § 542.13(a). The informal grievance is generally referred to as a "BP-8." If the issue cannot be resolved informally, the inmate may initiate the formal grievance process, by filing a formal written grievance, on the appropriate Administrative Remedy Request Form ("BP-9"), with the facility Warden. 28 C.F.R. § 542.14. If the inmate is not satisfied with the Warden's response, he may then appeal to the Regional Director for the geographical region in which the inmate's place of confinement is located. This appeal must be submitted on the appropriate Regional Administrative Remedy Appeal Form ("BP-10"). 28 C.F.R. § 542.15. Finally, if the inmate is not satisfied with the response provided by the Regional Director, he may appeal to the BOP's Office of General Counsel ("OGC"), on the appropriate Central Office Administrative Remedy Appeal Form ("BP11"). An appeal to the OGC is the final step in the Administrative Remedy Program and the grievance process. 28 C.F.R. § 542.15.

D.E. 102-1 at 10. An inmate may also file a sensitive grievance at the regional level if he believes his "safety or wellbeing would be placed in danger if the Request became known at the institutional level." *Id.* at 11 (citing 28 C.F.R. § 542.14(d)(1)). If the Regional Administrative Remedy Coordinator does not agree that the request is sensitive, "the Request is not accepted, and the inmate is advised in writing of the determination." *Id.* "The inmate may then pursue the

5

matter by submitting a Request at the institutional level, with the Warden permitting the inmate a reasonable extension of time for such resubmission." *Id.*

An exception to the exhaustion rule exists whenever prison officials decline to enforce their own procedural requirements and opt to consider an otherwise-defaulted claim on the merits. Courts can hear such cases. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). This exception does not apply in this case.

Additionally, "[a] prisoner's lack of compliance may be excused if the administrative remedies are not available, but [the Sixth Circuit] has required a prisoner to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cty.*, 636 F.3d 218, 223 (6th Cir. 2011)).

Exhaustion is an affirmative defense that "must be pleaded and proved by the defendants." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)). "When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Id.* (citing *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)). The Court "should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

Here Defendants argue that Greene did not exhaust his administrative remedies relative to the June 16, 2019 incident. D.E. 102-2. According to BOP records and the Declaration of Robin Eads, a BOP Paralegal, Greene filed two sensitive remedy requests at the regional level related to staff misconduct at USP McCreary on August 5 and 14 of 2019. D.E. 102-2 at 2, 11. Based on

6

the Regional Administrative Remedy Coordinator's determination that they were not sensitive, both requests were rejected on August 26, 2019. *Id.* Greene did not resubmit the issue to the Warden at the institutional level as directed. *Id.* at 2. The records also indicate that Greene filed five requests after his transfer to USP Canaan that are unrelated to the June 16 incident at USP McCreary. *Id.* at 2, 11. Defendants argue that, while he testified during his deposition that he was intimidated by threats of violence from Officers Gabbard and Buster, Greene was not actually deterred from exhausting his administrative remedies because he filed two sensitive requests at the regional level. D.E. 102-1 at 15.

Greene's complaint confirms that he filed two sensitive requests at the regional level regarding the June 2019 incident and that he received the determination that the requests were not sensitive. D.E. 1 at 9. Although the complaint does not specify when the first request was filed, it indicates that the second request was filed on July 27, 2019. *Id.* The complaint also indicates that Greene did not exhaust his administrative remedies due to the threats and intimidation by Officers Buster and Gabbard. *Id.* at 10.

Greene's deposition testimony indicates that he may have filed a sensitive request at the regional level, but, when he did, Officer Buster threatened to sexually assault him again. D.E. 95 at 82. Greene testified that this threat occurred two to three days after the June 16, 2019 incident. *Id.* Greene also stated that he was threatened to not file a request by Officer Gabbard a day or two after the incident. *Id.* at 78-79, 84-85. Greene then testified that he did not exhaust his administrative remedies due to the threats he received from the two officers. *Id.* at 86. However, Greene then stated that he was unsure if he filed a sensitive request at the regional level. *Id.* at 87-88. Greene confirmed that he filed requests after his transfer to USP Canaan in September 2019 pertaining to incidents at that facility. *Id.* at 96-100.

7

Greene's response to Defendant's motion for summary judgment indicates that Chance Bonner, another inmate at USP McCreary, obtained the sensitive request forms for him. D.E. 107 at 3. Greene filled out the forms and Bonner mailed the first request in July or early August of 2019 and mailed the second request about a week later. *Id.* Greene's declaration attached to his response indicates that he was unsure if Bonner mailed the sensitive requests. D.E. 107-1 at 3. Greene's declaration also indicates that he never received a rejection notice pertaining to the two sensitive requests. *Id.* at 2. In his response, Greene contends that, even if the sensitive requests were rejected, he never received such notice due to his transfer to USP Canaan. D.E. 107 at 6. Bonner's declaration, attached to Greene's response, confirms that he sent the sensitive requests in late July or early August on Greene's behalf. D.E. 107-1 at 1.

Defendants argue in their reply that Greene's deterrence argument fails for multiple reasons. First, Defendants argue that Greene filing sensitive requests at the regional level refutes his assertions that he was deterred from exhausting administrative remedies due to threats and intimidation. D.E. 116 at 2. Second, Defendants argue that Greene's assertion that he never received notice that his sensitive requests were rejected at the regional level is irrelevant. *Id.* at 2 n.2. According to the BOP's Administrative Remedy Program, "if an inmate does not receive a response within the time allotted, he may treat the lack of response as a denial, and move forward with the administrative remedy process." *Id.* (citing 28 C.F.R. § 542.18). Finally, Defendants argue that Greene's deterrence argument is further undermined by his transfer to USP Canaan, where he could have pursued his claims and did in fact resume filing grievances related to conditions there. *Id.*

The Sixth Circuit has rejected a plaintiff's deterrence argument on the basis of fear of retaliation where the record reflected that he "was not deterred from filing grievances; he simply

8

seldom followed through on all three steps of the process." *Pool v. Klenz*, No. 17-3426, 2018 WL 1989637, at *3 (6th Cir. Jan. 17, 2018). Greene argues that he is not required to show that he was actually deterred from filing grievances based on the Sixth Circuit's holding in *Gilmore v. Ormond*, No. 19-5237, 2019 WL 8222518 (6th Cir. Oct. 4, 2019). D.E. 107 at 6. As Defendants point out, Greene has made similar arguments in another case, *Greene v. United States*, No. 6:19-CV-00024-GFVT, 2021 WL 1214499, at *16 (E.D. Ky. Mar. 30, 2021); *see also* D.E. 102-1 at 15. There, District Judge Van Tatenhove distinguished *Gilmore* from the facts of that case, noting "the plaintiff in *Gilmore* claimed that he was unable to initiate the grievance process *at all* because he was denied the forms to do so." *Greene*, 2021 WL 1214499, at *15. The *Gilmore* Court also held that "[a]lthough Gilmore made contradictory claims about why he was prevented from exhausting his claims, those contradictions go to the weight of the evidence and do not by themselves show that [Defendant] was entitled to summary judgment." *Gilmore*, 2019 WL 8222518, at *2 (citing *Schreiber v. Moe*, 596 F.3d 323, 333-34 (6th Cir. 2010)). Conversely, Judge Van Tatenhove found that, "even assuming Mr. Green[e]'s allegations to be true, the administrative process was 'available' to Mr. Green[e]." *Greene*, 2021 WL 1214499, at *15.

Judge Van Tatenhove also discussed the distinctions between Sixth Circuit cases in which a plaintiff asserts that he was deterred by threats and did not pursue the remedy process at all and where the plaintiff asserted deterrence but did file remedy requests. *Id.* at *16 (discussing *Does 8-10*, 945 F.3d at 966; *Pool v. Klenz*, No. 17-3426, 2018 WL 1989637, at *3 (6th Cir. Jan. 17, 2018)). In the latter context, the Sixth Circuit has concluded "the plaintiff failed to establish that he was deterred from filing grievances by threats of retaliation where the record showed that plaintiff 'was not deterred from filing grievances; he simply seldom followed through on all

9

three steps of the process.'" *Id.* (quoting *Pool*, 2018 WL 1989637, at *3). Similarly, in the instant case, Greene admits that he worked with another inmate to file two sensitive requests at the regional level, despite the alleged threats and intimidation by Officers Buster and Gabbard. Regardless of whether he knew with certainty whether Bonner mailed the sensitive requests, Greene worked with Bonner to fill out the forms and they were, in fact, filed. Thus, even assuming Greene's allegations regarding the threats he received as true, he has failed to establish that they rendered the grievance process unavailable to him.

As to Greene's argument that he never received notice that the two sensitive requests were rejected, the remedy program provides that an inmate may treat a lack of response as a denial. 28 C.F.R. § 542.18. Greene was then required to file a grievance at the institutional level, but failed to do so.

In any event, Greene has failed to establish that he was deterred due to threats or retaliation once he was transferred to USP Canaan, and thus, has failed to establish that the remedy process was made unavailable to him. Generally, "[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for purposes of exhaustion." *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011) (citing *Blakey v. Beckstrom*, No. 06–163–HRW, 2007 WL 204005, at *2 (E.D. Ky. Jan. 24, 2007)). Greene filed five grievances after arriving at USP Canaan, but none pertained to the June 2019 events at USP McCreary. D.E. 102-2 at 2, 11-12. Greene's filings do not assert that he was threatened or intimidated from filing the grievances at USP Canaan. Rather, the intimidation and threats he received were isolated to officers at USP McCreary. Thus, once he failed to receive notice regarding the two sensitive requests filed at the regional level, Greene should have treated that lack of response as a denial and filed a grievance at the institutional level at USP Canaan,

10

which he failed to do.  Accordingly, Greene failed to fully exhaust the available administrative remedies with respect to the claims alleged in this case, and he has failed to show that the remedy process was made unavailable to him.  No reasonable jury could find that Greene exhausted his administrative remedies.  Given that Greene's compliant is procedurally barred under the PLRA, there is no need to additionally address the merits or Defendants' additional argument.

### III. Conclusion

As Rule 56(c) makes clear, to counter Defendants' motion for judgment, Greene must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other [such] materials." Fed. R. Civ. P. 56(c)(1)(a).  The Court finds that Greene failed to fully exhaust his available administrative remedies and has failed to show that the administrative process was unavailable to him.  The Court is left with no issue of material fact as to whether Greene failed to exhaust his administrative remedies.

The undersigned therefore **RECOMMENDS** that Defendants' motion for summary judgment (D.E. 102) be **GRANTED**, and Plaintiff's motion for summary judgment be (D.E. 108) **DENIED**.  The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further

appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

    This the 2nd day of September, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge